# EXHIBIT G

```
CR02 0181826 S              :  SUPERIOR COURT

STATE OF CONNECTICUT        :  J.D. OF FAIRFIELD

VS.                         :  AT BRIDGEPORT

DOLORES FONSECA             :  MAY 27, 2003
```

BEFORE:  HONORABLE SHERIDAN MOORE, JUDGE

APPEARANCES:

        NICHOLAS BOVE, JR., ESQUIRE
        Senior Assistant State's Attorney

        WILLIAMS BARNES, ESQUIRE
        For the Defendant

        KATHRYN KAY
        Court Monitor

```
1    at her and she turned around, went over to the bathroom,
2    turned out the light and then came back and stood there so
3    he could shine the flashlight at her?
4         A    Negative.  She's standing right next to the
5    bathroom, she just did this.
6         Q    So she's standing next to the bathroom door?
7         A    Correct.
8         Q    And you're testifying that she turned out the
9    light?
10        A    Correct.
11        Q    Did you ever put that in any of your reports?
12        A    No.
13             MR. BARNES:  Thank you.  No further
14        questions.
15             MR. BOVE:  No questions based on that, Your
16        Honor.
17             THE COURT:  Officer, you may step down.  I'll
18        remind you that you're still under subpoena, you
19        may be needed to testify further.  Please do not
20        discuss your testimony, or anybody else's
21        testimony, until such time as I give you leave to
22        do so.  Thank you.
23             THE WITNESS:  Okay.
24             (Whereupon the witness was excused).
25             MR. BOVE:  For purposes of the motion, the
26        State rests at this time, Your Honor.
27             MR. BARNES:  Your Honor, the defendant
```

1   believes that the State has not met its burden.
2           THE COURT: Okay. Before you -- so you do
3   not intend to offer any other witnesses at this
4   time?
5           MR. BARNES: No, I don't.
6           THE COURT: Okay.
7           MR. BARNES: I wanted to indicate that since
8   it's the State's burden, that the defendant
9   believes that the State has not met it, and that
10  that would be true whether the defendant
11  introduced any additional evidence or not. As it
12  happens, I'm not going to introduce any additional
13  evidence on the motion.
14          THE COURT: Okay. Then I'll continue to hear
15  the --
16          MR. BARNES: I'm sorry?
17          THE COURT: I'll hear your argument.
18          MR. BARNES: Okay. Thank you. There has to
19  have been probable cause for the arrest. In fact,
20  probable cause to have any kind of forcible -- any
21  kind of detention of my client. It is clear,
22  leaving aside the credibility issues, it's clear
23  from Officer Larregui's testimony and Officer
24  Alterio's testimony that Officer Larregui arrived
25  first, determined during this three to five minute
26  period from talking to my client that there was no
27  physical contact, no injury, and, in fact, of

1     course, there appears to be no claim that there
2     was any injury. He was satisfied. He testified
3     that there was no big deal. This was not a major
4     issue. His concern was for the sister who had to
5     be removed.
6         Officer Larregui candidly acknowledged that
7     in police work this often happens. People want
8     you to remove someone who's drunk or a problem
9     from their house and you go do it. When Officer
10    Alterio arrived, instead of obtaining any
11    information from the first officer on the scene,
12    and instead of the officer on the scene offering
13    any, he proceeded to aggressively question my
14    client. He heard, in response to that, my
15    client's undisputed claim that there were no --
16    there was no physical contact, no problem. In
17    other words, there were no injuries to search for.
18    That had already satisfied Officer Larregui.
19    Officer Alterio decides that he's going to check
20    my client for injuries, although there's no
21    indication that there were any injuries, by
22    shining his flashlight in this area. She happens
23    to be wearing a v-neck bathing suit. I think that
24    later, if Your Honor lets the matter go to trial,
25    it'll become apparent why he decided to shine his
26    light in that exact place. But he had no reason
27    to do it and he had no reason to approach her in

1   that manner. He had absolutely no basis for any
2   of his subsequent -- any of his conduct. He
3   wasn't acting in the performance of his duties
4   when he shone that flashlight on her.
5       Consequently, there was no reason for this
6   ever to have happened, and the subsequent charge
7   that she was disorderly, interfered with him, or
8   even committed assault upon him, is all pointless.
9   There was no reason for him to have been there in
10  the first place.
11      Now I have a second point. There's no
12  indication that there was any possible -- that
13  there was any kicking or blow. Officer Larregui
14  was in a position -- any kicking by her. Officer
15  Larregui, who was in a position to see it, saw
16  nothing. She's being held and controlled faced
17  forward walking out the door. It isn't -- there
18  is insufficient evidence for any jury to find for
19  there to be any probable cause that she actually
20  did commit this assault upon a police officer.
21      For that reason I would ask Your Honor to
22  dismiss. I'd further point out that if there was
23  no probable cause for the arrest, then the
24  statements made in response to the arrest, or
25  during the arrest, have to be suppressed as the
26  fruit of the poisonous tree. Consequently, if my
27  client made statements because she was angry or

1    unhappy, and I'm not conceding that what the State
2    says happened is exactly what did happen, but
3    let's assume that that's what happened, that she
4    made these statements, then there would be no
5    basis for admission of those statements. They
6    should be suppressed because the arrest was bad.
7    Thank you.
8        THE COURT: Attorney Bove.
9        MR. BOVE: I believe the State has proven
10   that there certainly is more than enough probable
11   cause in this situation. Officer Alterio was
12   directed to go there. He was the primary officer
13   to go there. Officer Larregui, as his cover
14   officer, happened to get there first and was there
15   for a few moments prior to Officer Alterio's
16   arrival. The fact that he was able -- he asked
17   certain questions while Officer Larregui as to
18   what his assessment was at the scene when he had
19   -- didn't even have his flashlight to check her
20   for injuries, is -- is a long stretch to say from
21   that that Officer Alterio shouldn't have done his
22   job when he arrived. In fact, as I asked Officer
23   Larregui on redirect, why didn't you -- why didn't
24   you tell him these things, he said, well, I'm just
25   a cover officer. I'm there to protect Officer
26   Alterio's back, basically. And that's what he did
27   do. When Officer Alterio arrived, Officer

```
 1          Larregui stepped back, investigated what had been
 2          going on in the other room and came back.  He
 3          witnessed part of the altercation.  We have
 4          established that Officer Alterio was there in the
 5          line of duty, he was on duty, he was in uniform.
 6          And when he attempted to shine his flashlight on
 7          the defendant, she slapped his hand and pushed the
 8          flashlight away, not once but twice.  Even after
 9          being warned by officer Alterio that she shouldn't
10          do that, that she was interfering with a police
11          officer.  And subsequent to that, there was the
12          scuffle, she hit her head on the door jam and as
13          he took her out we had Officer Alterio testify
14          that she, in fact, kicked him.  The fact that
15          Officer Larregui didn't actually see the kick
16          doesn't mean it didn't happen.  Because, as he
17          said, he was following right behind, he wouldn't
18          necessarily have seen it.  And I think that's a
19          judgment for the jury to make.
20              We basically have met all the elements in
21          this case, Your Honor, and I -- I believe that the
22          mere assertion by defense counsel that this is
23          much ado about nothing and that Officer Alterio
24          shouldn't have been doing there -- shouldn't have
25          been there at all doing his job, he was the one
26          who was directed to take the call.  He was the
27          primary officer.  You heard Officer Larregui say
```

1    that on more than one occasion, both on direct and
2    on cross-examination. He was there as the cover
3    officer. It was Officer Alterio's call, and that
4    means something. It means that the officer has to
5    investigate the call. It doesn't mean that when
6    the officer investigating the call arrives, that
7    they're supposed to have a discussion, a long
8    drawn out discussion, about whether we should even
9    be there. Officer Alterio started to ask some
10   questions. Things got out of control. It's the
11   State's position that wasn't Officer Alterio's
12   fault. And we believe we have proven that
13   certainly the motions to dismiss should be denied,
14   and as well, the motions to suppress the
15   statements that she made. Thank you.
16        MR. BARNES: Your Honor, just one point, and
17   I think it's significant. Mr. Bove spoke about
18   all the different responsibilities of the various
19   officers involved. How Officer Larregui's duty
20   was merely to protect the back of attorney -- of
21   Officer Alterio and how they weren't supposed to
22   communicate this information with each other.
23   There's no evidence of that. It's the State's
24   burden to establish by evidence the basis of its
25   case. There seems to be a lot of assumptions Your
26   Honor is being asked to make about police work.
27   To excuse officers not talking to each other and

```
 1          to excuse what went on here.  Well, there's no
 2          evidence of it.  Admittedly Officer Larregui said,
 3          I was the cover officer, it was his call, he's got
 4          to make the call.  But that's a long way from what
 5          Mr. Bove just said as the explanation for why
 6          there was probable cause to continue.  There's no
 7          evidence as to the duties of the cover officer
 8          versus the assigned officer when the cover officer
 9          arrives first and interviews the person who made
10          the call.  I would frankly find it astonishing if
11          any superior officer in the police department
12          would testify that it is the obligation of a cover
13          officer and a reporting officer to completely
14          disregard what the covering officer did, just
15          because he happened to be the covering officer.
16          Even if he was there first, and even if he did
17          good police work, you have to disregard it
18          because, hey, he's only the covering officer.
19          It's by no means a given.  Mr. Bove is talking
20          about it as if it were a given.  But there's no
21          evidence of that.  Without evidence you have to go
22          with the fact that according to both officers,
23          they didn't have any reason to do what they did.
24          That is Alterio had no reason to examine her for
25          injuries.  He had no reason to shine that light
26          down her front.  He had no reason to get into the
27          altercation that lead to all of these bad things
```

1  happening.

2  There's no probable cause for this to have
3  happened in the first place. And to allow the
4  prosecution to continue under those circumstances
5  would be, I respectfully submit to Your Honor,
6  inappropriate. If that was -- if what Mr. Bove
7  said is at the heart of the prosecution's case, we
8  should have heard something about it. We didn't.

9  MR. BOVE: May the State just be heard
10  briefly, Your Honor? We're here on a motion to
11  dismiss criminal charges. It has nothing to do
12  with what counsel is saying the obligation of a
13  cover officer to communicate. That's purely in
14  the realm of the twilight zone. We're here to
15  decide whether, based on the sworn testimony of
16  two police officers, there is -- or there is
17  probable cause for disorderly conduct, interfering
18  with an officer and assault on an officer. And
19  based on the testimony, I believe the Court can
20  only draw one conclusion. We're not here to
21  decide whether things should have been done a
22  certain way based on the subjective opinion of
23  counsel. The only evidence we've heard is the
24  evidence of the two officers about what went on,
25  and there's more than sufficient evidence to deny
26  the motion to dismiss. Thank you.

27  THE COURT: Looking first at the motion to

1  dismiss. While the grounds -- well, I guess the
2  grounds as stated fall under Section 41-8(5),
3  which is insufficient -- insufficiency of evidence
4  or cause to justify the bringing or continuing of
5  such information and placing the defendant on
6  trial. Counsel for the defense has made an
7  argument that there was no probable cause based on
8  the Officer Larregui's original assessment of the
9  situation. I believe that we are dealing with two
10 actual incidents. The incident that originally
11 was the call and the State's allegation of what
12 occurred after the police officers arrived, which
13 ultimately lead to the arrest of Ms. Fonseca.
14    While it may be true that there was no
15 determination -- or there was a determination of
16 no probable cause or ultimately no arrest made in
17 the original call, it does not make the officer's
18 visit illegal. They were there on a legitimate
19 call for a purpose as determined by the phone call
20 of the claim made by Ms. Fonseca of an unwanted
21 party at her home. In fact, the reason, it may
22 happen many times, the reasons why an officer is
23 originally called may not be, in fact, a valid
24 reason or a -- one that results in an arrest or a
25 finding of probable cause. It does not negate the
26 officer's legitimate purpose for being there.
27    Now once there, the State's claim is events

Case 3:03-cv-01055-AVC    Document 73-8    Filed 11/08/2005    Page 13 of 17

70

1   happened that ultimately resulted in the arrest of
2   Ms. Fonseca.  The Court, in making a determination
3   of a motion for dismiss, has to view the evidence
4   in a light most favorable to the State.  The
5   State's burden is only a preponderance of evidence
6   to sustain the Court's finding in their behalf on
7   the motion to dismiss.
8        The basis of the defense's first claim as to
9   Officer Alterio's behavior is that his
10  investigation was not necessary given the fight --
11  given the light that Officer Larregui -- or
12  Larregui, I'm going to keep saying that wrong,
13  Larregui was there already and have already done a
14  investigation.  While certain conduct by officers
15  are scrutinized by the Court, investigation
16  procedures are not scrutinized unless, in fact,
17  the conduct is extreme and against given
18  principles already enumerated by case law.  In
19  this particular case, the Court does not find that
20  Officer Alterio's investigation procedures were
21  extreme or falling in the prescribed prohibited
22  conduct.
23       The Court only has to find that there was, in
24  fact, evidence or testimony as it was by these two
25  officers.  First, Officer Alterio who indicated
26  that his actions were to investigate the incident
27  regardless of what Officer Larregui's previous

```
 1      determinations had been made.  And Officer
 2      Larregui's testimony that he step back and did not
 3      offer any information because he believed that it
 4      was Officer Alterio's investigation.  Whether or
 5      not the State is correct or the defense is correct
 6      as to what the actual procedures may have been by
 7      the department, the Court has no information.  All
 8      the Court can act on is what the testimony that it
 9      heard today, and that is the testimony of these
10      two officers and their information and belief at
11      the time that they were involved in this
12      particular action.  And each officer indicated
13      that one took the forefront because he believed it
14      was his obligation to do so.  One stepped back
15      because he believed it was the other officer's
16      obligation to do so.  Given the testimony of the
17      officers, the Court is not going to make a
18      determination that any one investigation practice
19      falls within the prohibited actions as determined
20      by our past case law.
21          In regards to the situation of the kicking,
22      that is a factual question for the jury and the
23      testimony of the officer will be evaluated by the
24      jury at the time.  Accordingly, the motion to
25      dismiss is denied.
26          In regards to the motion to suppress, I don't
27      believe that any of the statements as made by the
```

```
 1    defendant, while they are evidence of maybe her
 2    demeanor and attitude, are not the basis of the
 3    information against the defendant. The
 4    information, as I read the long form information,
 5    speaks to the disorderly conduct is fighting or
 6    engaging in behavior. Interference is the hitting
 7    of the flashlight. And the assault is the
 8    kicking. Even -- so I don't think they form the
 9    basis of the charges against her. Even if that's
10    the case, the statements would not be suppressed
11    because the statements that I heard testimony as
12    to, at least today, deals with before there was
13    any arrest. My understanding was those statements
14    were made during the course of the flashlight
15    incident.
16         But, as I said, I think the -- they don't
17    form the basis of the -- they don't lend to the
18    State's case as to any basis. Statements made by
19    the defendant to the police officer may be
20    construed as free speech, but I don't think the
21    State's making an allegation that she made any
22    statements that were ultimately lead to or were
23    the basis of her arrest. All of her -- the basis
24    of the arrest, as I read the long form
25    information, deals with physical contact or --
26    and/or with either objects or the officers in
27    particular. So the motion to suppress is also
```

73

1          denied.

```
NO. CR02 0181826 S           : SUPERIOR COURT

STATE OF CONNECTICUT         : J.D. OF FAIRFIELD

VS.                          : AT BRIDGEPORT

DOLORES FONSECA              : MAY 27, 2003
```

CERTIFICATION

I hereby certify that the above and foregoing is a true and correct transcript of the recorded notes of the proceedings at the hearing in the above-entitled cause, heard before HONORABLE SHERIDAN MOORE, Judge, in the Superior Court, Judicial District of Fairfield, Bridgeport, Connecticut, on the 27th day of May, 2003.

Dated this 17th of June, 2003.

*Kathryn Kay*
Kathryn Kay
Court Monitor