UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOLORES FONSECA, ET AL

          Plaintiff,   :   CIV. NO. 3:03CV1055 (AVC)

vs.

JASON ALTERIO, ET AL

          Defendants   :   NOVEMBER 8, 2005

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Dolores Fonseca has filed this civil rights action alleging that the Defendants violated her rights in that they falsely arrested her and utilized excessive force in the course of the arrest. The Plaintiff contends that Officer Larregui failed to prevent the harm to Dolores Fonseca allegedly caused by Officer Alterio. In particular, the Plaintiff alleges that the report and charges written by Alterio were false and that each officer wrote false reports about the incident of August 10, 2002. Officer Larregui testified at the criminal trial of Dolores Fonseca and she contends his participation assisted what she claims were false charges. The Plaintiff, Rafael Fonseca, while not at home on this evening, alleges a loss of consortium as a result of the actions of the Defendants. Melanie Fonseca has made a claim pursuant to

common law for intentional infliction of emotional distress because she alleges that she witnessed the encounter and arrest of her mother by the Defendants.

The Plaintiffs include four state court actions for negligence, indemnification and negligent hiring and supervision by the City of Bridgeport.

The Defendants, Jorge Larregui and the City of Bridgeport, submit this memorandum in support of their request for summary judgment as to Counts Two through Count Nine.

## BACKGROUND

The Plaintiffs filed this complaint based upon an incident that occurred at the house of Dolores Fonseca on August 10, 2002. Ms Fonseca lived at 347 Alpine Street with her husband, Rafael Fonseca, and her daughter, Melanie Fonseca, on the date of this incident (Exhibit A – Deposition of Dolores Fonseca at page 40). However, on August 10, 2002, Rafael Fonseca was away for the weekend as part of his National Guard duty (Exhibit B – Deposition of Dolores Fonseca at pages 178-179).

This was a Saturday, and Dolores Fonseca had spent the day at a party at Indian Wells Park celebrating with members of her family (Exhibit C – Deposition of Dolores Fonseca at page 183). During the course of the celebrating at the Park, Ms. Fonseca had approximately two Bacardi Silvers and chocolate cake shots (Exhibit D – Deposition of Dolores Fonseca at page 186). She drove herself and her daughter

home. She invited the members of her family to come back to her house. During the course of the evening one of Ms. Fonseca's sisters, who was intoxicated, began causing a disturbance so much so that the police were called to the house by Dolores Fonseca. In fact, the reports of the officers and the testimony of Dolores Fonseca support the fact that a number of people were intoxicated (Exhibit E - Report of Gaudette; Exhibit F - Deposition of Dolores Fonseca at pages 305, 310). The Use of Force Form filed by Officer Alterio, and Officer Larregui's statement, indicate Dolores Fonseca was also intoxicated (Exhibit G – Use of Force; Exhibit H – Larregui's statement at pages 2 and 3). According to Melanie Fonseca, her aunt, who is a police officer, Annie Ortiz, came to her for the telephone (Exhibit F - Deposition of Melanie Fonseca at page 28). Thereafter, it was Dolores who spoke to the Dispatcher and asked for a police officer to be sent to her house. She contended that she needed an officer because there was "violence." She further related that it was "drunk and fighting" (Exhibit J - Conversation from tape of Communications Aided Dispatch System of Bridgeport Police Department, page 1).

    As a result of the call for help by Ms. Fonseca, a priority one call went out to the police cruiser assigned to the sector. Because it was a priority one, Jorge Larregui responded as backup. He was the first to arrive. Officer Alterio arrived shortly after Larregui. The call was handled by Alterio. Officer Larregui removed himself from the hallway area where Ms. Fonseca met him and performed another

task of checking the other individual he had seen walk out of the kitchen (Exhibit K – February 12, 2003 Statement of Larregui at page 4). When he returned he saw Ms. Fonseca pushing Officer Alterio's hand, which had a flashlight, at least two times and then he saw Officer Alterio begin the process for arrest (Exhibit L - Larregui's statement at page 5). Ms Fonseca resisted and Officer Alterio pushed her against the wall in an effort to put handcuffs on her. He was unable to get the handcuffs on her by himself because she was resisting and "very combative." Officer Larregui stepped in to take one hand to put the handcuffs on her. Officer Larregui was not involved in this attempt and saw her "whack her head on the door that leads to the basement" during an attempt "to get control of her cause she was being combative." Ms. Fonseca was taken to the police car and, thereafter, treated at the scene and in the hospital for a cut over her eye. Officer Larregui filed a report and had statements taken as a result of a complaint by Ms. Fonseca against Officer Jason Alterio.

**ARGUMENT**

A.   **General Standard**

A Motion for Summary Judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American Int'l Group, Inc. v. London American

Int'l Corp., 664 F.2d 348, 351 (2d. 1982). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty, 477 U.S. 242, 255 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Aldrich v. Randolph Cent. School District, 963 F.2d 520, 523 (2d. Cir. 1992) (quoting Anderson, 477 U.S. at 428). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof" then summary judgment is appropriate. Celotex Corp. v. Catrett, supra at 323. Mere "speculation or conjecture" will not suffice. Western World Ins. Co. v. Stack Oil, 922 F.2d 118, 21 (2nd Cir. 1990) nor will reliance on "unsupported assertions." Goenga v. March of Dimes, 51 F.2d 14, 18 (2nd Cir. 1995). The non-moving party must provide "concrete evidence." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505 (1986); Martinez v. Simmonetti, 202 F.3d 625 (2nd Cir.). In the instant action there are no genuine issues of fact and the documentation supports a summary judgment for the defendant.

**B.   There Is No Evidence That The Defendant Larregui Was Involved In A False Arrest Or Conspiracy To Permit A False Arrest Or The Use Of Excessive Force**

To prove a Section 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2)

to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). The complaint does not allege a conspiracy pursuant to Section 1985 as to Officer Larregui. A complaint pursuant to Section 1985 would not be successful because Officer Larregui is Hispanic as is Ms. Fonseca and, therefore, there is no racial or other class based invidious discriminatory animus that could be demonstrated nor alleged. Mian v. Donaldson Jeniette Sec. Corp., 7 F. 3d 1085, 1088 (2d Cir. 1993).

The allegations against Jorge Larregui are entirely conclusory and contrary to some of the very testimony of Dolores Fonseca and Melanie Fonseca and, therefore, are not supported in the present legal action. In Leon v. Murphy, 998 F.2d 303, 313 (2d 1993), the Federal Court granted summary judgment when there were only conclusory allegations. The mere use of the word conspiracy without more does not state a claim. Additionally, the very testimony of the Plaintiff in her statements to the Internal Affairs Division does not support the allegations. Officer Larregui was with her only a matter of seconds before Alterio arrived (Exhibit M - Statement of Fonseca at page 15). She stated that Officer Larregui automatically stepped back (Exhibit N - Statement at page 3). Thereafter, she describes the events of the arrest that she was forcefully removed and handcuffed because she was resisting (Exhibit O - Statement at page 7). She was resisting so much that

she was dragged by the officers to the police car because she wanted to stay in the house (Exhibit P - Statement at page 9). She states that in her conversation with Officer Larregui he kept telling her to calm down and trying to get the handcuffs on (Exhibit Q - Statement at pages 10, 11 and 20). The Plaintiff contends that Larregui failed to intervene but, by her own admission, she was struggling and it was quick. Whether an officer had a "realistic opportunity to intervene to prevent the harm from occurring should be reviewed by the Court, looking separately at the episodes of force that make up the Plaintiff's claim. O'Neill v. Krzeminski, 839 F.2d 9 (2nd Cir. 1988). In particular, the present instance can be viewed at the time when Officer Alterio reacted to the pushing away of his hand and, thereafter, to the attempts to control an angry woman.[1] In the statement of Officer Larregui regarding the incident he states that he was trying to see who was in the backyard and, as he walked back to Officer Alterio, he was arguing with the woman. He stated that after being warned not to shove his flashlight away, she did so and he told her it was an assault of a police officer (Exhibits K and L - Statement of Larregui at pages 4 and 5). Officer Larregui then relays that Alterio put his flashlight away and grabbed her arm and as he started to grab her "she became very combative . . . she was fighting him off."

---

[1] Mrs. Fonseca described herself as "angry." She further said "you don't deserve to be a cop. My husband is going to get you when he finds out what you did to me. You motherf . . . . . " (Exhibit R – Deposition of Dolores Fonseca at pages 169,170 and 330).

(Exhibit L). There is no evidence that supports a finding that Officer Larregui took part in an assault especially given the fact that when he saw the struggle he attempted to get her hand to cuff it. Additionally, the testimony of Ms. Fonseca that she was angry and resisting prevents a finding as to Officer Larregui (Exhibit R). There is no direct evidence that Officer Larregui did anything but his job. He did not initiate any action as to Ms. Fonseca. Afterward, he attempted to help handcuff her only because with her resisting Officer Alterio, could not get her under control.

The simultaneous or instantaneous action of Alterio to react to her pushing him away and her resistance did not afford Officer Larregui the opportunity to do anything other than grab her hand to handcuff. The Plaintiff has not, by her own description of the actions, demonstrated that Officer Larregui had a realistic opportunity to intervene to prevent the harm from occurring. Anderson v. Braner, 17 F.3d 552, 557 (2nd Cir. 1994). Additionally, the deposition of Melanie Fonseca supports this position because she states she saw only a hand while peeking through the door and heard a noise she described as the door being slammed as someone pushed into the door (Exhibit S – Deposition of Melanie Fonseca at page 64). Given the nature of the incident and the instantaneous response by Officer Larregui to just help arrest a resisting woman, there is no basis to find that Officer Larregui was involved in a conspiracy for a false arrest or use of excessive force. Lastly, Plaintiff's claim that Officer Larregui is liable because he testified falsely at

trial is not supported by the deposition of Nicholas Bove. There must be some specific circumstances that attack the veracity of Officer Larregui. In order to overcome the presumption of the officer acting reasonably, the plaintiff must show that in filing reports or testifying he recklessly, knowingly and intentionally made false statements or affidavits. Lewis v. City of Mt. Vernon, 984 F. Supp. 748 at 754 (S.D. N.Y. 1997); Velardi v. Walsh, 40 F.3d 569, 573 (2nd Cir. 1994). There are no facts to support these claims. The trial court in the criminal matter refused to grant a Motion to Dismiss or a Motion for Acquittal (Exhibit T – May 27 and 29 Trial Court Rulings).

## C.   There Is No Evidence Or Testimony To Support A Monell Count

In the Fifth Count of the complaint, the Plaintiff alleges that the City of Bridgeport is liable pursuant to 42 U.S.C. 1983 because it "knew officers were routinely engaged in this unlawful conduct" but took no action to correct the conduct. Additionally, the Plaintiffs contend that the City failed to discipline and control subordinates and, thus, encouraged these violations. The Plaintiff has not provided during the course of pursuing this action any specific information or evidence that would support this cause of action. In order to survive the motion, the Plaintiff is required to make specific allegations indicating the deprivation of civil rights as a result of some municipal policy. Alfaro Motors, Inc. v. Ward, 814 F. 2d 883, 887 (2d Cir. 1987).

A claim of a municipality violating civil rights requires that the plaintiff demonstrate (1) that the constitutional violation resulted from a municipal custom, policy or practice, and (2) there is a direct causal link between the custom or policy and the violation alleged. Monell v. Department of Social Servs., 436 U.S. 658, 690-691, 98 S. Ct. 2018 (1978); City of Canton v. Harris, 109 S. Ct. 1197, 489 U.S. 378, 385 (1989). A municipality and its supervisory officials may not be held liable under Section 1983 for unconstitutional acts of lower level employees solely on the basis of the employment relationship. Monell, supra. The Plaintiff has not provided any evidence or testimony to satisfy the second step of a Monell count that a municipal or supervisory failure was the moving force in the alleged constitutional violation. Board of the County Commissioners v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997, Thomas v. Roach) 165 F. 3d 137, 145-147 (2d Cir. 1999).

Additionally, because the Plaintiff in this action alleges as a portion of the conduct of the municipality that it failed to supervise or discipline its employees, the courts require that the Plaintiff demonstrate that such alleged failure amounts to a deliberate indifference to the constitutional rights. City of Canton v. Harris, 109 S. Ct. 1197 (1989). In the absence of direct evidence that the violation was so likely to occur that Defendants could reasonably be said to have been deliberately indifferent with respect to it. Canton, supra at 390; Ricciuti v. N.Y.C. Transit Authority, 941 F. 2d 119, 123 (2d Cir. 1991). The complaint has not provided any specific instances

of use of excessive force or the claim of false arrest that would support this very claim. In particular, the Plaintiff cannot support this type of allegation on general information related to the Police Department as a whole but is required to demonstrate specific instances where the police officers who have been named as defendants have engaged in conduct of utilizing excessive force or falsely arresting an individual.

The Plaintiff is obligated to provide evidence from which a reasonable juror could conclude that, before the alleged use of force and false arrest that took place here, the City had complaints of use of force or false arrest that demonstrated a policy of negligent supervision which rose to the level of deliberate indifference to officers' use of force in violation of constitutional rights. Berry v. City of Detroit, 25 F. 3d 1342, 1346 (6th Cir. 1994). The Plaintiff has no evidence or testimony that fulfills this obligation. In fact, the Plaintiff conducted depositions of a number of city officials. For instance, Deputy Chief Krasicky was deposed on August 13, 2003. The Plaintiff did not inquire about other incidents that may have occurred prior to this allegation. Deputy Chief Krasicky discussed the fact the Department had initiated a review of the present action and during the interim, in fairness to all parties, had placed Officer Alterio on desk duty (Exhibit U - Krasicky deposition at pages 32 and 61). Deputy Chief Krasicky also indicated that there has only been one instance that she is aware that Officer Alterio was disciplined. That was after August 10, 2002

and it did not involve false arrest or a claim of use of excessive force (Exhibit V - Deposition of Krasicky at pages 55 and 57). Deputy Krasicky stated that she did not have any knowledge of disciplinary action before August 10, 2002 involving Officer Alterio (Exhibit W - Deposition of Krasicky at page 59). The Plaintiff never inquired nor is there any testimony or evidence that Officer Larregui has been the subject of a complaint or been disciplined before or after this incident. Additionally, it is very interesting that, although Ms. Fonseca has named Officer Larregui in this action, she never filed a civilian complaint alleging he violated her civil rights nor did the Department initiate a complaint. The Plaintiffs conducted the deposition of the Captain in charge of the sector and officers involved in this incident. The Plaintiff did not address through questioning the supervision, training and discipline of the officers named in this legal action. The most significant aspect of Captain Gaudette's testimony was that it was determined that the injury occurred when Ms. Fonseca hit her "head on the door or the door jamb while she was being placed under arrest and resisting." (Exhibit X - Deposition of Gaudette at page 45).

    The Plaintiffs have not included any allegations, testimony or evidence about any policymaking individual with authority in the City of Bridgeport. In Amnesty America v. Town of West Hartford, 361 F.3d 113 (2nd Cir. 2004), the court analyzed very specifically municipal liability based upon the Monell theory. In Amnesty, the

court discusses the law requiring evidence that the subordinate's conduct must be extended to the omissions of higher ranking.

The City of Bridgeport Police Department has as its highest ranking official, the Chief of Police, formerly Superintendent (Exhibit Y - Charter Section 2.40.010, et seq.). Additionally, oversight of the Department is through a Board of Police Commissioners (Exhibit Z - Charter Section 2.40.90, et seq.). The Plaintiff fails to provide a policymaker. Unlike the facts in Amnesty, the Plaintiff has not provided any link to a policymaker. In Amnesty, the court stated that the plaintiff must establish by evidence that a policymaker had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action of supervision was "obvious." Vann v. City of New York, 72 F.2d 1040, 1049 (2nd Cir. 1995) and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference rather than mere negligence or bureaucratic inaction. Amnesty, supra at 130.

Unlike Amnesty, there is no evidence that a policymaker was present at the time and, if so, that the policymaker stood by which the individual officers violated constitutional rights. In the instant action, all of the officers deposed by the Plaintiff indicated that they were actively involved in an investigation and reporting of the circumstances for this action. There is no evidence of a policymaker standing by and ignoring this event or any other event.

A case brought upon a theory of respondent superior does not apply to make municipalities liable even if one of their officials commits a constitutional tort. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

Lastly, even if there was some evidence of either improper or inadequate action by a policymaker, the Plaintiff has failed to demonstrate any link between the action f the officers in this case and a policy, practice or customer of the municipality.

"The touchstone of the Section 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." Monell, 436 U.S. 690.

The failure to demonstrate that there is such a causal link is fatal to the Plaintiff's claim against the municipality.

Given the total lack of testimony and evidence of an unconstitutional policy, practice or custom that caused a constitutional violation, the Court should grant the Defendants, City of Bridgeport and Jorge Larregui, Motion for Summary Judgment.

### D. The Plaintiff Has Failed To Introduce Any Facts To Satisfy The Legal Criteria For An Intentional Infliction Of Emotional Distress

The Plaintiff, Melanie Fonseca, contends that Officer Larregui and the City are liable for intentional infliction of emotional distress.

In order to succeed on a claim of intentional infliction of emotional distress, the Plaintiff must prove that the Defendants: (1) intended to inflict emotional distress

or knew or should have known that emotional distress was a likely result of his/her conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct was the cause of the Plaintiff's distress; and (4) the emotional distress sustained by the Plaintiff was severe. Petyon v. Ellis, 200 Conn. 243, 253 (1986); DeLaurentis v. City of New Haven, 200 Conn. 225, 226-27 (1991); Benton v. Simpson, 829 A.2d 68, 74 (C.A. Ct. 2003).

The issue of whether the Defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the Court. In fact, the standard in determining intentional infliction is extremely high. "Liability has been found only where the conduct has been outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious to utterly intolerable in a civilized community. Mellely v. Eastman Kodak Co., 42 Conn. Supp. 17, 20 (1991); Appleton v. Board of Education, 254 Conn. 205 (2000), quoting Restatement (Second) Torts 4, comment (d). Extreme and outrageous behavior is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Carrol v. Allstate Ins. Co., 815 A.2d 119, 126 (Ct. 2003).

in the present case, the deposition testimony of Melanie Fonseca does not indicate that she had any effect except being sad when she saw her mother walking

with the two police officers outside (Exhibit aa – Deposition of Melanie Fonseca at pages 56, 57, 65, 71, 74 and 84). Melanie indicated that she is not afraid when she sees police officers (Exhibit bb -- Deposition of Melanie Fonseca at page 72). Melanie has not talked to anyone at school such, such as a counselor or principal, nor does she recall talking to Dr. Blumash or anyone about the indicate (Exhibit cc – Deposition of Melanie Fonseca at pages 71-72).

Given the law and the testimony, the Plaintiff has not provided any basis for a finding of intentional infliction.

E.  **The Plaintiff Has Failed To Present Any Evidence Or Testimony As To The State Cause Of Action**

As to Counts 8 and 8, which allege state cause of action, there is no evidence to demonstrate that the City of Bridgeport engaged in any negligent action. However, even if the Court believes the City of Bridgeport may have some liability, the State law provides that the City of Bridgeport is immune from liability for governmental actions which require the exercise of discretion. Evon v. Andrews, 211 Conn. 501, 505 (1998). The operation of a Police Department has long been recognized as a governmental function. Wysocki v. Derby, 140 Conn. 173, 175 (1953).

Therefore, the Plaintiffs' unsupported claims of negligence based on the employees acts or as a result of the hiring and supervision without more does not satisfy the law and summary judgment should be granted.

THE DEFENDANTS
JORGE LARREGUI
THE CITY OF BRIDGEPORT

By: _____
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Telephone #203/576-7647
Fed. Bar No. 05746

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 8th day of November, 2005, to:

Dolores Fonseca
347 Alpine Street
Bridgeport, CT  06610

Elliot Spector, Esq.
Noble, Spector, Young & O'Connor
One Congress Street
Hartford, CT  06114

_____
Barbara Brazzel-Massaro