EXHIBITS IN
PAPER FORM

FILED

2006 FEB -9 A II: 00

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLORES FONSECA, ET AL | : | CIV. NO. 3:03CV1055 (AVC) |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| JASON ALTERIO, ET AL | : | |
| | : | |
| **Defendants** | : | **FEBRUARY 9, 2006** |

## DEFENDANTS CITY AND LARREGUI'S RESPONSE TO
## THE PLAINTIFF'S OBJECTION TO SUMMARY JUDGMENT

### Introduction

The Plaintiffs have provided to this Court a response to the Motion for Summary Judgment as to the City that incorporated a number of documents from various aspects of the Police Department. The Plaintiffs submitted their own interpretation and analysis of the documents which does not truly reflect the purpose, intent or correct factual content of the documents.

The Defendants have included in this response affidavits that reflect a more thorough understanding and analysis of the documents as well as information that rebuts the unsupported position taken by the Plaintiffs in interpreting the documents. The Plaintiffs have chosen to ignore or to investigate the background and meaning of the three areas of documents they submitted in support of their

BMF06019

1

position that the City of Bridgeport is liable pursuant to <u>Monell</u>. Additionally, the Plaintiffs have not indicated how the documents they refer to in their opposition create the affirmative link to the allegations of the Plaintiffs in the instant case.

## <u>Argument</u> - The Plaintiff Misconstrues the Basis of the Documents that are Before the Court

Exhibit 28 is a report to the Special Master in a long standing case brought by minority police officers challenging the disparity in discipline of police officers. The Plaintiff emphasizes the fact that there were 450 cases of discipline. This is misleading because the discipline was not solely based upon violations of civil rights allegations, but involved a myriad of personnel issues or problems the officers may have had in relation to performance of their duties or complaints. For instance, on page one you have a charge of a "poor report" and "lost equipment" that is an act totally unrelated to the allegations in this Complaint. On the other hand, the fact that the Bridgeport Police Department disciplines its' officers on a regular basis is contrary to the Plaintiffs' claims that the City does nothing.

Plaintiffs' Exhibit 28 that covers a period of ten years is prepared to keep the Special Master in touch with the way discipline is distributed among the officers based upon ethnicity. It is not a review to determine whether an officer acted in violation of the civil rights of an individual, but demonstrates the distribution of discipline to all officers. The report does not provide the actual allegations of wrong

doing or why the discipline is distributed to the extent it is noted. What the exhibit does indicate without a need for explanation is that a number of officers are aware of discipline if they do not perform their jobs properly. Any other suggestion as to what the exhibit discloses is speculation by the Plaintiffs. Without specific testimony or evidence connecting this exhibit with the allegations in this Complaint, the exhibit has no meaning and no relevance to a claim of policy, practice or custom linked to these claims.

Also, the Plaintiffs' argument seems to extend to the claim that the reports of the Office of Internal Affairs noted as her Exhibit 1 relate only to claims of excessive force. This is factually wrong (Exhibit dd - Affidavit of Lt. Roderick Porter). The report that the Plaintiffs have attached as Exhibit 1 are the records of all complaints and investigations, including internal, that were assigned to the Office of Internal Affairs during the time period from 1993 forward. The time period provided was consistent with the Plaintiffs' production request for this information covering approximately ten years prior to the 2002 incident. The Plaintiffs' interpretation of the content of the document is incorrect. The Plaintiffs provided an interpretation of the report without conducting any discovery as to the use and intent of this report. The Plaintiffs did not research what complaints were being made and what process was being followed by the Internal Affairs Division through the Policy and Procedure as set forth in the Bridgeport Police Department Rules and Regulations (Exhibit dd -

Affidavit of Lt. Roderick Porter, Attachment 1). The Director of the Office of Internal Affairs has provided a review of the investigations that contradicts this assumption. Lt. Porter has provided a printout of the types of claims reviewed by this Division in 2001 (Exhibit dd - Attachment 2).

It is clear that in 2001 there were not hundreds of excessive force complaints submitted to the Bridgeport Police Department, but that during that year before the allegation in this case there were 19 complaints alleging the improper use of force investigated by the Internal Affairs Division of the Bridgeport Police Department (Exhibit dd - Affidavit and Attachments of Lt. Porter). Of those 19 complaints, 3 were withdrawn and the remaining 16 were fully investigated. The investigation of the complaints by Internal Affairs involved more than simply taking a statement of the police officer. The investigation process requires that the investigator take extensive action beginning with a statement of all parties. Some of the parties will have an attorney present with them and, upon completion of the statement, the individual reviews and signs with a notary. There are also statements of any individual who is a witness identified by complainant, officer or discovered through investigation. In some situations medical reports are requested and visits inquiring of the medical provider are included (Exhibit dd - Affidavit of Porter, Attachment 3). The investigation is not limited by any bounds other than to do a thorough review, investigation and arrive at final findings.

Lt. Porter also indicates that the completed investigation of Internal Affairs is provided by the Division to the Board of Police Commissioners, the Mayor and the Chief as well as notice to the complainant. Pursuant to the Barros Decree process, the complainant has the opportunity to have his complaint heard by the Board of Police Commissioners even if the Internal Affairs has determined that there was no violation of Rules and Regulations by the Officer (Barros Decree, Section X).

Lastly, either the Board or the Chief can request further review of the findings or another investigation of the complaint (Exhibit dd - Affidavit of Lt. Porter). This is precisely what occurred in the instant civilian complaint before a legal action was filed. The Plaintiffs' contention that because there are civilian complaints without demonstrating that the complaints are not properly investigated does not satisfy their burden of proof on a Monell count. In order to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation. Wimmer v. Suffolk County Police Department, 176 F. 3d 125, 137 (2d Cir. 1999). The Plaintiffs mere inclusion of use of force forms, disciplinary records for the special master, and the disposition sheet of the Internal Affairs Division by themselves does not demonstrate a policy. In Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) cited by the Plaintiffs, the court received more than an allegation that the Division did not adequately investigate. The court heard testimony about the superficial investigation. The plaintiff in Beck also demonstrated there was no connection that

an officer was involved in violent encounters with citizens and, thereafter, there was no corrective action by the City. Lt. Porter, in his affidavit, outlines the thorough review of a citizen complaint and the process allowing the citizen to pursue their claim to the Board of Police Commissioners even after the investigative process (Exhibit dd - Affidavit of Porter). This is different and much more exhaustive than the process of the Hartford Police Department noted in Galindez v. Miller, 285 F. Supp. 2d 190 (D. Conn. 2003). In the instant case the Plaintiff has simply provided the Court with a number of documents without demonstrating their relevance to the issue at hand and asks the Court to find, without more, that the City of Bridgeport has a custom. In Talib v. Garcia, 2000 U.S. Dist. LEXIS 9752 (2000), the court noted that simply submitting civilian complaints with little or no investigation was not sufficient because the plaintiff did not connect the civilian complaints to the incident and actions at hand. Here, the Plaintiff has also failed to provide the connection. In Norma Watts, Admin. Et al v. City of Hartford, 2004 Dist. LEXIS 5402 (March 31, 2004), the court found for the City on the claim that it failed to supervise and discipline. The court stated that in order to prove the claim against the City, she needed to provide evidence that a repeated failure to discipline other officers was closely related to and actually caused the shooting of the plaintiffs decedent. Citing Berry v. City of Detroit, 25 F. 3d 1342 ( 6th Cir. 1994). The court further stated that a general policy of lax discipline, assuming it could be proven, does not demonstrate

the indifference to serious misconduct rising to the level of an unconstitutional act.

The Court can also easily determine that the initiation of procedures to review every use of force including spraying mace helps prevent the improper use of force by the Bridgeport Police Department. This can be buttressed with the information that the Plaintiff ignored in the response, that is, the number of legal actions and/or the findings by the court or jury of allegations of use of unreasonable force by the Bridgeport Police Department.

During the same period from 1999 to 2002 there were no findings against the officers or the City of Bridgeport in any civil action. Contrary to the Plaintiffs claims and during approximately the same time period, although there were legal actions alleging excessive force, there were no findings against the City of Bridgeport (Exhibit ee - Affidavit of Barbara Brazzel-Massaro with Attachments).

As is indicated, the City of Bridgeport did discipline Officer Azzaritto with a 3 month suspension before there was a legal action filed by Mr. Lisi regarding his actions while on patrol (Exhibit dd -- Attachment 5; Exhibit ee). Additionally, the legal action involving Mr. Lisi and Officer Azzaritto resulted in a settlement of $9, 975.00.

In order to be found to have a deliberate indifference the plaintiff needs to do more than say the City did not discipline its officers for various departmental violations. If there were a number of complaints of the officers using force and the

findings time and again ignored the complaint, it would be a different situation. That is not the evidence introduced by these Plaintiffs

**Prior Citizen Complaints Against Alterio**

The Plaintiff indicates, without support, that the fact that Alterio had 3 prior civilian complaints against him that resulted in an exonerated finding, the Court should assume that the City was promoting his improper behavior. However, the Plaintiff never provided to this Court nor did the Plaintiff refer to the facts of the allegations in the citizen complaint. A review of the civilian complaints does not support the Plaintiffs proposition. The Defendants have attached Exhibits ff, gg and hh of the complaints and the investigative files concerning Officer Alterio. Two of the complaints were completed after the incident that is the subject of this legal action (Exhibits ff and gg).

The complaint filed on April 15, 2002 by Manuel Grajalez contained allegations that the officer did not have probable cause for the arrest. The factual background was obtained through reports and interviews. There is no indication that the findings or investigation in this matter were improper (Exhibit hh). Likewise, the complaint by Mrs. Haggerty that is attached demonstrates that Officer Alterio performed his job and Mrs. Haggerty was unhappy that he would not do more to address her problems with her neighbors. There is nothing in this complaint to demonstrate the City's lack of investigation or follow through (Exhibit ff). The last of

the civilian complaints referred to by the plaintiffs was not as plaintiffs indicate a rubber stamp regarding the circumstances. The final report which was issued after this incident does question whether Officer Alterio had the legal authority to pat down the driver of the car. After an analysis by the investigating officer, it was determined that the actions were not violative of the rules and regulations. However, the report does not ignore the actions of the officer (Exhibit gg). None of these complaints involve the use of excessive force by Officer Alterio as is being claimed by Mrs. Fonseca.

It is also interesting to note that the Plaintiff does not refer to any prior use of force forms submitted by the Defendant Alterio which would lend to support her claim that the Bridgeport Police Department had some notice of a policy, practice or custom of Alterio that required it to discipline, re-train or take other corrective action. Given the lack of any history of wrongdoing on the part of Alterio, as well as other officers, the Plaintiffs' submission of the three civilian complaints with no connection to this type of claim does not give rise to a <u>Monell</u> count against the City of Bridgeport.

**The Plaintiffs Misrepresent and Speculate as to the Intent and the Information Contained in the Use of Force Forms**

The Plaintiffs have provided to this Court a skewed analysis of the use of force forms utilized by the Bridgeport Police Department. The Plaintiffs'

Memorandum would have you believe that the forms are for the purpose of bringing to discipline an officer who utilizes force. This premise is misleading.

The City of Bridgeport Police Department has Rules and Regulations that refer to the Use of Force (non-deadly) by its police officers (Exhibit  Policy and Procedure 4.6).  Additionally, the Bridgeport Police Department officers complete a separate form in the event they utilize OC spray during the course of their duties (Exhibit jj - Oleoresin capsicum aerosol form.)

The Plaintiffs include, as Exhibits 4, 5, 6 and 7, groups of Use of Force Forms and reviews by a supervisor for the years 2000, 2001, 2002, and 2003 in support of their response to the claims pursuant to <u>Monell</u>.   The inherent fallacy with this submission is that the Plaintiff. without support of any wrongdoing, utilizes these forms to argue that because they exist and there was no finding of an improper use of force by the supervisor, you can assume that the Police Department has promoted the use of force.  This contention is without any merit.   The purpose of the review is to determine if the officers violated any Department policy.  What is obvious from the reports is that there is a continual review and supervision of any force used in performance of their duties that results in the need to use physical force or use OC spray.  The Plaintiff has failed to analyze the Use of Force Forms to demonstrate that there is a pervasive use of excessive force.  The Plaintiff has not compared the forms to legal actions that may have been filed alleging improper use of force or

reviewed them or compared them to the number of overall arrests completed by the Bridgeport Police Officers in a given year. If the Plaintiff submitted testimony or evidence linking these forms to successful legal challenges or otherwise it may be a questionable, however there is no evidence other than submission of the reports and review of department policy provided. The Plaintiffs simply submit the forms and then speculates or pontificates that their existence without demonstrated punishment supports the contention that the City is responsible for an unconstitutional policy. This does not follow the law.

First of all, the Court should be aware that the documents submitted as Exhibits 4, 5, 6, and 7 are reports required any time an officer uses any force and/or uses OC spray in performing his duties (Exhibit ii - Policy and Procedure of the City of Bridgeport, Police Department, Section 4.6). Of interest is that it is not necessary that there be any sign of physical injury before the form is submitted. In viewing the documents included in the exhibit it is clear that Sections D and E requesting medical treatment did not always contain a description of injuries. For instance, some Use of Force Forms, numbers 001151 and 001171, 001184, 001304, 001325, 001347, of Exhibit 4 report that there is no injury, yet the form was submitted by the officer. In particular, number 001325 was the report of a police pursuit and not an excessive use of force, and 001347 was a report of the discharge of a weapon but no injuries were reported other than the traumatic stress to the police officer. These

are six of the 21 Use of Force reports for 2000 to the Department with no real injury but the incidents required a report to be filed. In the arrest of Mr. Harris for a domestic, Officer Lynn Gorman filled out a Use of Force form that indicates in the report that his injuries were mostly the result of him breaking a window. There was a bump on his head noted which, in the report, required no medical treatment (Exhibit 4 - Numbers 001227 to 001234). The filing of this form by Officer Gorman is part of procedure but there is nothing to indicate she should have been reprimanded for improper use of force.

A use of force form is also completed in a situation in which the officer uses OC spray. The report of Officer Pizarro and Officer Cotto in the confrontation with Igor Mirondo, the incident with Sgt. Halpin, the incident with Civilian Detention Officer Palmieri and Officer Davila, are perfect examples of the use of the report for OC spray in 2000 (Exhibit 4 at 001252-001259, 001260-001266 and 001267-001277, 001316-001317, 001316-001321, and 001362). In reading the reports of each of these instances, it is a credit to the officers that they utilized a minimal level of force in only spraying OC.

The Plaintiff has submitted 70 reports of officers using some force and filling out a Department Use of Force form for the year 2001. Other than copying the reports that contain the required form and all of the reports that the officers generated as a result of the arrest, the Plaintiff does not review or analyze the

BMF06019

reports themselves. Instead, the Plaintiffs contend, without support, that the exoneration of wrongdoing in relation to these incidents in and of itself satisfies their burden alleging a <u>Monell</u> claim against the City of Bridgeport. However, if this Court is to look at Plaintiffs Exhibit 5 again, it will observe that the Plaintiff has included 70 separate packets of police officers reports containing a narrative, the arrest reports, Use of Force form or form for use of oleoresin capsicum aerosol spray (oc spray). The Plaintiff would have the Court believe that the submission of these reports by themselves are an indication of wrongdoing.    Without anything more, the Court cannot speculate that the Department, through this review and supervisory oversight, engaged in improper action. <u>Sarus v. Rotundo</u>, 831 F. 2d 397, 402 (2d Cir. 1987); <u>Stengel v. City of Hartford</u>, 652 F. Supp. 572 (D. Conn. 1987). In fact, a review of the 2001 documents will show the Court that contrary to the Plaintiffs speculation, there are many reports submitted because the officer used only OC spray which requires a report and review (Exhibit 5 at 001417-001424, 001522-1523, 001535-1538, 001662, 001722, 002046- 002048, 0022130, 001798, 001804-001805, 001811, 001821- 001824, 001925-001928, 001932-001935, 001947-001953, 001960-001963,001970--001971, 001982 - 001985, and 001996-01999). The Plaintiffs' assumption that because there was no finding of improper use of force in any of the eighteen reports for the use of spray the City has a policy is not supported by any evidence or testimony except supposition.    There are a number of

reports that are submitted with no injury to the individual arrested but a report from the officer because he or she used some force (Plaintiffs' Exhibit 5 at pages 001493, 001676, 001685-686, 001566-001567, 001575-001577, 001612-001619, 001713-715, 002058- 002061, 002067-002068, 002089-002092, 002175-002176, 002181-002183, 001736-001738,001780-001782, 001784-001786).    These 15 reports once again are submitted in accordance with mandated policy but nothing has been introduced to justify the plaintiffs' theory. So not only are there reports that have no connection to physical injury but there are numerous reports within the exhibit that include injuries to the officers.

Not one of the packets submitted by the Plaintiffs has demonstrated that the City has been promoting the use of excessive force.  Likewise, the 2002 reports submitted as Exhibit 6 and the 2003 reports as Exhibit 7, do not demonstrate an unquestioned policy or practice that violates civil rights much like the 2000 and 2001 reports.  A review indicates that there are instances with no injury, little injury or even injury only to the officer.  However, no specific form, even including the use of force form submitted by Officer Alterio, crys out that the City did not diligently supervise its employees.

The Plaintiff attempts to use these mandated reports much the same as the plaintiff in <u>Sarus v. Rotundo</u>, 831 F2d. 397 (2d Cir. 1987) attempted to utilize the number of resisting arrest charges filed by the police as showing there was an

indifference to excessive force.   However, in <u>Sarus</u>, the court ruled that without adducing evidence of the circumstances surrounding the arrests or even presenting corresponding figures from other police departments, the sheer number by itself was not sufficient to demonstrate a policy.  In <u>Singleton v. City of Newburgh</u>, 1 F. Supp. 2d 306, 311 (S.D.N.Y. 1998), the court found three complaints of excessive force did no demonstrate deliberate indifference to use of excessive force.  <u>Mendoza v. City of Rome</u>, 872 F. Supp. 1110, 1118-19 (N.D.N.Y. 1994) found that claims filed against the City standing alone, do not establish a pattern, policy or practice which is causally related to the use of excessive force upon the plaintiff      and    does    not constitute evidence of violation of

Constitutional rights.  <u>Stengel v. City of Hartford</u>, 652 F. Supp. 572, 574 (D.Conn. 1987).

In looking at the statistics as to the number of arrests during the course of time 1994 to 2006 each year and viewing the use of force forms submitted each year, there were miniscule instances when force was necessary.  The affidavit of Nelson Ladue indicates that during 2000 there were 8132 UCR arrests and 7880 motor vehicle arrests by Bridgeport Police officer (Exhibit kk).  When this is compared to the 21 Use of Force forms submitted by the Plaintiffs, the instances of any use of force appears miniscule, never mind a link to the policy of promoting the improper use of force by Bridgeport Police.  Additionally, in the years 2001 and 2002 the total

arrests amounted to 17,101 and 18,858 arrests(Exhibit kk).    Comparing these figures for arrests to the instances that called for some use of force there are minimal instances and none absent the instant case that involved Officer Alterio.

The Plaintiffs have failed to analyze any of the Use of Force forms or the attached supporting documents to demonstrate to this Court that there is a policy of encouraging a violation of civil rights through the use of force.

Bald accusations have no evidentiary value absent sworn affidavits providing factual support.  Covington v. City of New York, 1998 U.S. Dist. LEXIS 6283, No. 94-Civ. 4234, 1998 WL 226183 at 4 (S.D.N.Y. May 4, 1998).  In Sarus v. Rotundo, 831 F. 2d 397, 402 (2d Cir. 1987) the court would not permit the plaintiff to just introduce a number of resisting charges to show that there was a policy of excessive force. The court determined that the plaintiff was obligated to produce evidence of the prior arrests and demonstrate the circumstances that fit within the claim.

THE DEFENDANTS
JORGE LARREGUI
THE CITY OF BRIDGEPORT

By: _____
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Telephone #203/576-7647
Fed. Bar No. 05746

## CERTIFICATION

This is to certify that a copy of the "Defendants City and Larregui's

Response to the Plaintiff's Objection to Summary Judgment" has been mailed,

postage prepaid, on this 9th day of February, 2006, to:

Diane Polan, Esq.
129 Church Street, Suite 802
New Haven, CT  06510

Elliot Spector, Esq.
Noble, Spector, Young & O'Connor
One Congress Street
Hartford, CT  06114

_____
**Barbara Brazzel-Massaro**