### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOLORES FONSECA, RAFAEL FONSECA and MELANIE FONSECA, minor, ppa, <br> Plaintiffs, | : <br> : <br> : <br> : <br> : |
| v. | :    Civil No. 3:03CV1055 (AVC) |
| JASON ALTERIO, a Bridgeport police officer, in his individual capacity; JORGE LARREGUI, a Bridgeport police officer, in his individual capacity; and the CITY OF BRIDGEPORT, a municipal corporation, <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## RULING ON THE DEFENDANT, JASON ALTERIO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of the United States Constitution. The complaint alleges false arrest, false imprisonment, malicious prosecution and excessive force in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

The defendant, Jason Alterio, now moves for partial summary judgment. Alterio argues that: 1) he is entitled to judgment as a matter of law with respect to the claim of false imprisonment because, in light of the parallel claim of false arrest, it is surplusage; 2) he is entitled to judgment as a matter of law with respect to the claims of malicious prosecution and false arrest

because Fonseca did not suffer a deprivation of liberty under the Fourth Amendment, which is a necessary prerequisite for such claims; 3) he is entitled to judgment as a matter of law with respect to the claim of false arrest because he had probable cause to arrest, 4) even if there exists a genuine issue of material fact over the existence of probable cause, Fonseca is estopped from litigating the issue of probable cause, and 5) that even if he did not have probable cause, he is entitled to qualified immunity; and 6) that he is entitled to judgment as a matter of law to the extent the complaint alleges equal protection violations because there is no evidence to support such claims.

For the reasons hereinafter set forth, the court concludes that Alterio's motion for partial summary judgment should be GRANTED in part and DENIED in part.

### FACTS

Examination of the complaint, exhibits, motion for partial summary judgment, Rule 56(a) statements, and the responses thereto discloses the following undisputed, material facts:

On August 10, 2002, the plaintiff, Dolores Fonseca, had a party at her home in Bridgeport, Connecticut. One Debbie Alicea, Fonseca's sister, was a guest at the party. Alicea was drunk and she refused to leave the party.

2

At 11:00 pm that night, Fonseca called 911 and asked for help in dealing with Alicea and claims that she told the police dispatcher that she was concerned that there could be violence. The defendant, officer Jason Alterio, responded to the call. The defendant, officer Jorge Larregui, also responded to the call. Larregui was the first officer to arrive at the Fonseca home. Alterio arrived shortly thereafter.

Larregui entered the house and went into a hallway. Fonseca walked out of her bedroom and introduced herself as the owner of the house to Larregui. Alterio entered the house next. Larregui allowed Alterio to question Fonseca and walked away from the hallway.

Moments later, Alterio shone his flashlight onto Fonseca even though, according to Fonseca, there was an adequate amount of light in the hallway. In response, Fonseca hit Alterio's flashlight and/or arm to bat the flashlight away. Alterio warned Fonseca not to touch the flashlight. Fonseca batted the flashlight a second time. Alterio then proceeded to handcuff and arrest Fonseca and, according to Fonseca, he handcuffed her without any warning. Fonseca fought against Alterio's attempt to handcuff her. Fonseca injured her head on a door in the struggle. Larregui, who had returned and witnessed Fonseca hitting Alterio's flashlight and/or arm, grabbed one of Fonseca's hands to help Alterio arrest her.

3

After the two handcuffed Fonseca, Alterio and Larregui took
Fonseca outside to the police car.  The defendants then treated
Fonseca's injuries and released her into the care of ambulance
personnel.

The defendants issued a misdemeanor summons to Fonseca,
charging her with disorderly conduct and interference with a
police officer.  The prosecuting authority later charged Fonseca
with assault on a police officer.

In June of 2003, a jury acquitted Fonseca of all three
charges at the conclusion of her trial.

On June 13, 2003, Fonseca filed this action against Alterio,
Larregui, and the City of Bridgeport.

## STANDARD

The court appropriately grants summary judgment when the
evidentiary record shows that there are no genuine issues of
material fact and that the moving party is entitled to judgment
as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 "provides
that the mere existence of *some* alleged factual dispute between
the parties will not defeat an otherwise properly supported
motion for summary judgment; the requirement is that there be no
*genuine* issue of *material* fact."  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-48 (1986) (emphasis original).  In
determining whether the record presents genuine issues for trial,
the court must view all inferences and ambiguities in a light

4

most favorable to the non-moving party.  See Bryant v. Maffucci,
923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849
(1991).  A plaintiff raises a genuine issue of material fact if
the "the evidence is such that a reasonable jury could return a
verdict for the non-moving party." Anderson, 477 U.S. 248.  A
material fact is a fact that the underlying substantive law
identifies as critical.  Anderson, 477 U.S. 248.  "Factual
disputes that are irrelevant or unnecessary will not be counted."
Anderson, 477 U.S. 248.  "One of the principal purposes of the
summary judgment rule is to isolate and dispose of factually
unsupported claims . . . [and] it should be interpreted in a way
that allows it to accomplish this purpose." Celotex v. Catrett,
477 U.S. 317, 323-324 (1986).

## **DISCUSSION**

### 1. False Imprisonment

      Alterio first argues that he is entitled to judgment as a
matter of law with respect to the claim of false imprisonment.
Specifically, he argues that under Connecticut law, a claim for
false imprisonment is synonymous with a claim for false arrest,
so the claims are duplicative.  Fonseca does not respond.  Under
Connecticut law, the tort of false imprisonment is identical to
the tort of false arrest.  Outlaw v. City of Meriden, 43 Conn.
App. 387 (1996).  See also Love v. Town of Granby, No. Civ.
3:03CV1960 (EEB), 2004 WL 1683159 at *4 (D. Conn. July 12, 2004).

5

Therefore, Alterio is entitled to summary judgment on the claim of false imprisonment on the grounds that the claim is surplusage.

2. Fourth Amendment Deprivation of Liberty

Alterio argues next that summary judgment should be granted with respect to the claims of false arrest and malicious prosecution. Specifically, he argues that Fonseca has failed to demonstrate a necessary prerequisite to claims for false arrest and malicious prosecution, that is, that she was deprived of her liberty.

Fonseca responds that her claims of false arrest and malicious prosecution are sound because she did suffer a deprivation of liberty.

a. False Arrest

Fonseca argues that with respect to her claim of false arrest, the liberty deprivation occurred with her arrest.

To bring a 42 U.S.C. § 1983 [Section 1983] claim for false arrest, a plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested, (2) the plaintiff was aware of the arrest, (3) there was no consent to the arrest, and (4) the arrest was not supported by probable cause." Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn. 2003). A plaintiff must also show that a deprivation of liberty, consistent with a seizure under the Fourth Amendment, occurred

6

and that the deprivation occurred before the start of the legal process, generally "from the moment of arrest to the time of arraignment." Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995). An arrest itself is "the quintessential 'seizure of the person' under the Fourth Amendment . . . ." California v. Hodari D., 499 U.S. 621, 624 (1991).

It is undisputed that Alterio arrested Fonseca without a warrant and before the start of any legal process. The arrest itself constitutes a seizure and thus, Fonseca was deprived of her liberty under the Fourth Amendment. Therefore, Alterio is not entitled to summary judgment on Fonseca's false arrest claim on the grounds that she has demonstrated a deprivation of liberty.

b. Malicious Prosecution

Fonseca argues that with respect to her claim of malicious prosecution, the liberty deprivation occurred with her arrest, and with service of the summons, the criminal information and her trial.

Under Section 1983, malicious prosecution claims are "governed by state law." Russell v. Smith, 68 F.3d 33 (2d Cir. 1995). To bring a malicious prosecution claim in Connecticut, a plaintiff must show that:

> (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the

> plaintiff; (3) the defendant acted without probable
> cause; and (4) the defendant acted with malice,
> primarily for a purpose other than that of bringing an
> offender to justice.

McHale v. W.B.S. Corp., 187 Conn. 444 (1982). Furthermore, a
plaintiff must show that there was a deprivation of liberty that
is consistent with a seizure under the Fourth Amendment. Singer
v. Fulton, 63 F.3d 110, 116 (2d Cir. 1995). "The deprivation of
liberty—the seizure—must have been effected pursuant to the legal
process. . . . Ordinarily this 'legal process' will be either in
the form of a warrant . . . or a subsequent arraignment." Id. at
116-17. The legal process can occur "in any of a number of ways,
e.g., by the filing of an indictment, information, or other
formal charge . . . ." Murphy v. Lynn, 118 F.3d 938, 944 (2d
Cir. 1997).

"The liberty deprivations regulated by the Fourth Amendment
are not limited to physical detentions. . . . [They also include
liberties such as] the accused's freedom to travel on pretrial
release." Murphy, 118 F.3d at 945. The Second Circuit, however,
has never directly decided whether the mere issuance of a summons
to a defendant and a requirement for the defendant to appear in
court, without any other restrictions on pretrial release,
constitutes a seizure. Zak v. Robertson, 249 F. Supp. 2d 203,
207 (D. Conn. 2003).

8

In <u>Zak</u>, the court held that a seizure does not occur from the mere issuance of a summons to a defendant with no other pretrial release restrictions. <u>Id.</u> at 208. Both the First Circuit, in <u>Nieves v. McSweeney</u>, 241 F.3d 46 (1st Cir. 2001), and the Third Circuit, in <u>Dibella v. Borough of Beachwood</u>, 407 F.3d 599 (3d Cir. 2005), have held that, absent any other pretrial release restrictions, an issuance of a summons and a requirement to appear for trial do not constitute a seizure under the Fourth Amendment. <u>Zak</u>, 249 F. Supp. 2d at 207-08.

Here, it is undisputed that after Alterio and Larregui released Fonseca, the prosecuting authority filed an information and issued a summons to Fonseca, which charged her with assault on a police officer and required her to appear for trial. No other restrictions were placed on Fonseca as a result of that summons. The court concludes first that the filing of the information was the start of the legal process. The court concludes second that the restrictions placed on Fonseca pursuant to the legal process, the issuance of the summons and the requirement to appear at trial, do not rise to the level of a seizure and thus Fonseca has not suffered a deprivation of liberty. Therefore, Alterio is entitled to summary judgment on Fonseca's malicious prosecution claim on the grounds that she has failed to demonstrate a deprivation of liberty.

3. <u>Probable Cause</u>

9

Alterio argues next that summary judgment should be granted with respect to the claim of false arrest. Specifically, he argues that he is entitled to judgment as a matter of law because he had probable cause to arrest and probable cause is a complete defense to a claim of false arrest.

Fonseca responds that summary judgment should be denied with respect to the claim of false arrest because there exists a genuine issue of material fact as to whether there was probable cause to arrest her.

To succeed on a Section 1983 false arrest claim, a plaintiff must show that the arresting officer did not have probable cause to arrest. Singer v. Fulton, 63 F.3d 110, 118 (2d Cir. 1995). See also Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn. 2003) (holding that in order for a tort of false arrest, under Connecticut law, to succeed, the plaintiff must show that the arresting officer did not have probable cause). If the arresting officer has probable cause, then "[t]here can be no federal civil rights claim for false arrest." Singer, 63 F.3d at 118.

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Generally, if the facts are in

10

dispute over the existence of probable cause, the issue is to be decided at trial.  Id. at 852.

Probable cause must be examined from an objective viewpoint. Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  The officer's subjective reasons for arresting the defendant play no role in the analysis.  Id. at 153.  Objectively, as long as there is probable cause to arrest the defendant, the arrest is valid and it will defeat any false arrest claim.  Id. at 152.  See also Lieberman v. Dudley, No. 3:95CV2437 (AHN), 1998 U.S. Dist. LEXIS 16809, at *6 n.1 (D. Conn. July 24, 1998).

Alterio and Larregui arrested Fonseca for the charges of interference with a police officer and disorderly conduct.

a. Interference with a Police Officer

Under Connecticut law, "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders, or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."  CONN. GEN. STAT. ANN. § 53a-167a(a) (West 2004).  In order for a defendant to be guilty under the statute, the police officer must be acting "in the performance of [his] duties."  State v. Davis, 261 Conn. 553, 566 (2002) (internal citations omitted).

Fonseca does not dispute that she batted Alterio's flashlight.  However, she disputes that she did interfere with a police officer when she batted the flashlight.  She contends that

11

that there was adequate lighting in the hallway and because of the adequate lighting, there was no need for Alterio to use his flashlight.  When Alterio continued to use the flashlight, when he had no need to do so, he should have realized that a reasonable person in Fonseca's position would perceive the use of the flashlight as an unnecessary annoyance and would try to bat the flashlight away.  Fonseca contends that, based on this particular set of facts, Alterio could not have probable cause to arrest on the charge of interference with a police officer.

Because of the foregoing disputed facts, there are genuine issues of material fact over the existence of probable cause to arrest Fonseca for interference with a police officer.

b. <u>Disorderly Conduct</u>

Under Connecticut law, "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person."  CONN. GEN. STAT. ANN. § 53a-182(a) (West 2004).

Fonseca disputes that she intended to cause inconvenience, annoyance, or alarm when she batted Alterio's flashlight. Fonseca contends that when Alterio used his flashlight, when he had no need to do so, he should have realized that a reasonable

12

person in Fonseca's position would perceive the use of the flashlight as an unnecessary annoyance and that the reasonable person, when she bats the flashlight away, would merely intend to move the flashlight away, and not intend to cause inconvenience, annoyance or alarm.  Therefore, there exists a genuine issue of material fact as to whether there was probable cause to arrest Fonseca for disorderly conduct.

For the foregoing reasons, there exist genuine issues of material fact as to whether there was probable cause to arrest Fonseca for either one of the charges.  Therefore, as to the claim of false arrest, summary judgment is denied.

4. <u>Collateral Estoppel</u>

Alterio next argues that even if there exists a genuine issue of material fact over probable cause, Fonseca should be prevented from litigating the issue of probable cause. Specifically, he argues that the judge in Fonseca's criminal trial ruled four times that there was probable cause to arrest Fonseca and that under the doctrine of collateral estoppel, those rulings must be given preclusive effect here.

Fonseca responds that the rulings on probable cause have no preclusive effect here.  Specifically, she argues that collateral estoppel does not bar relitigation of an issue if a party was barred from litigating an issue as a matter of law.  She contends that her acquittal, as a matter of law, barred her from appealing

13

the issue of probable cause and consequently that collateral
estoppel is not applicable here.

When a court determines whether an issue is precluded in a
Section 1983 action, a "federal court must give to a state-court
judgment the same preclusive effect as would be given that
judgment under the law of the State in which the judgment was
rendered."  Migra v. Warren City School Dist. Bd. Of Ed., 465
U.S. 75, 81 (1984).

In Connecticut, collateral estoppel:

> [P]rohibits the relitigation of an issue when that
> issue was actually litigated and necessarily determined
> in a prior action. . . . For an issue to be subject to
> collateral estoppel, it must have been fully and fairly
> litigated . . . .  The doctrine of collateral estoppel
> is based on the public policy that a party should not
> be able to relitigate a matter which it already has had
> an opportunity to litigate.

(Citations omitted; emphasis in original; internal quotation
marks omitted.) Connecticut Natural Gas Corp. v. Miller, 239
Conn. 313, 324 (1996) (quoting Comm'r of Motor Vehicles v. DeMilo
& Co., 233 Conn. 254, 267 (1995)).  If a party does not have an
opportunity to litigate an issue because that party cannot appeal
a decision, as a matter of law, then "neither the decision of an
administrative agency nor that of a court is ordinarily entitled
to be accorded preclusive effect in further litigation."
Convalescent Center of Bloomfield, Inc. v. Dept. of Income
Maintenance, 208 Conn. 187, 201 (1988).

14

Under Connecticut law, "any defendant in a criminal prosecution, aggrieved by any decision of the superior court, . . . may be relieved by appeal." CONN. GEN. STAT. ANN. § 54-95(a) (West 2001). An acquittal, which clears the defendant of all criminal charges, does not affect a defendant or his interests in any adverse manner. See, e.g., Spencer v. Casavilla, 44 F.3d 74, 78 (2d Cir. 1994) ("Ordinarily, a party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, i.e., that he is 'aggrieved' by the order."). Therefore, the defendant is not aggrieved by an acquittal and is consequently unable to appeal, as a matter of law, any decisions made in the criminal trial.

It is undisputed that, in Fonseca's criminal trial, the jury acquitted her. Fonseca was then unable to appeal, as a matter of law, the judge's rulings on probable cause. Because of this, Fonseca did not have an opportunity to fairly litigate the issue of probable cause. Therefore, the rulings on probable cause are not given a preclusive effect here.

5. Qualified Immunity

Alterio argues next that even if he did not have probable cause to arrest Fonseca, he is still entitled to a defense of qualified immunity. Specifically, Alterio argues that he had arguable probable cause, in that it was objectively reasonable

15

for him to believe that he had probable cause to arrest Fonseca. Therefore, he contends, he should be granted qualified immunity and be protected from suit.

Fonseca responds that Alterio is not entitled to qualified immunity because he did not have probable cause. Specifically, she argues that there exist genuine issues of material fact as to whether Alterio had probable cause and, as a result, these issues preclude a qualified immunity ruling on summary judgment.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . [it is] an immunity from suit rather than a mere defense to liability." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (internal citations omitted). In conducting the qualified immunity analysis, a court must determine (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right . . . [and (2) is that right] clearly established?" <u>Id.</u> at 201, 202.

"The right not to be arrested without probable cause is a clearly established right." <u>Lee v. Sandberg</u>, 136 F.3d 94, 102 (2d Cir. 1997). Even if a police officer violates this right, however, the officer will still be entitled to qualified immunity if he has arguable probable cause, in that his "actions were not objectively unreasonable at the time they were taken." <u>Id.</u> at 102. "Arguable probable cause exists when a reasonable police

officer in the same circumstances and possessing the same
knowledge as the officer in question could have reasonably
believed that probable cause existed in the light of well
established law."  Id. at 102 (internal citation and internal
quotation marks omitted).

A defendant is not entitled to summary judgment on qualified
immunity unless he can show, when viewing the facts in a light
most favorable to the plaintiff, that "no reasonable jury . . .
could conclude that the defendant's actions were objectively
unreasonable in light of clearly established law."  O'Bert Ex
Rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003).

Fonseca disputes that Alterio had arguable probable cause.
Fonseca contends that when Alterio shone his flashlight on her,
when he had no need to do so, a reasonable police officer in
Alterio's position would believe that Fonseca would perceive the
use of the flashlight as an unnecessary annoyance and would try
to bat the flashlight away.  Fonseca contends that, based on this
set of facts, a reasonable police officer could not believe that
he had probable cause to arrest Fonseca.

A reasonable jury, viewing the facts in a light most
favorable to Fonseca, could conclude that Alterio did not have
arguable probable cause.  Because of this, there exists a genuine
issue of material fact as to whether Alterio had arguable
probable cause and thus, qualified immunity.  Therefore,

Alterio's motion for summary judgment on the grounds of qualified immunity is denied.

6. <u>Equal Protection Violations</u>

Officer Alterio argues that summary judgment should be granted as to claim of equal protection violations. Specifically, Officer Alterio argues that there is no factual basis to support an equal protection claim. Fonseca does not respond. The court agrees with Alterio that there is no factual basis to support an equal protection claim. Therefore, Alterio's motion for summary judgment as to the claim of equal protection violations is granted.

**CONCLUSION**

For the foregoing reasons, Alterio's motion for partial summary judgment is GRANTED with respect to the claims of false imprisonment, malicious prosecution and equal protection violations, and DENIED with respect to the claim of false arrest.

It is so ordered on this 24th day of July of 2006 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge